UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NIKOLAS JOHN LARSON,<br><br>Defendant. | 5:19-CR-50165-RAL<br><br><br>OPINION AND ORDER DENYING MOTION FOR COMPASSIONATE RELEASE |

Defendant Nikolas John Larson filed a pro se motion for compassionate release. Doc. 75. Pursuant to the procedure established by Amended Standing Order 20-06, his case was categorized as Low Priority, Doc. 78, and the Federal Public Defender for the Districts of South Dakota and North Dakota chose not to supplement Larson's motion. The Government opposes the motion. Doc. 80. For the following reasons, this Court denies Larson's motion for compassionate release.

I.  **Factual Background**

On June 25, 2021, Larson pled guilty to one count of receipt of child pornography[1] in violation of 18 U.S.C. § 2252A(a)(2)(A). Docs. 54, 56. On October 25, 2021, the undersigned

---

[1] Child pornography is more appropriately called "Child Sexual Abuse Material," also referenced as CSAM, or "Child Sexual Abuse Images." See What is Child Sexual Abuse Material (CSAM), RAINN (Aug. 25, 2022), https://www.rainn.org/news/what-child-sexual-abuse-material-csam; Investigations Div., Off. Inspector Gen., Notifications of Concerns with the Absence of Policy Regarding FBI Employees Emailing Child Sexual Abuse Material and Other Contraband, U.S. Dep't Just. 1 n.1 (May 2022), https://oig.justice.gov/sites/default/files/reports/22-081.pdf; Child Pornography, U.S. Dep't Just., https://www.justice.gov/criminal-ceos/child-pornography (May 28, 2020). Pornography connotes a certain aspect of consent that is impossible when the images or videos depict children. What is Child Sexual Abuse Material (CSAM), supra. Because of the lack of consent, it is not possible to make "pornography," instead it is evidence of a child being

1

judge sentenced Larson to 60 months custody followed by five years of supervised release and to pay $51,000 in restitution and $100 to the Victims Assistance Fund. Doc. 73. Larson petitioned his warden for an earlier release and was denied. Doc. 76 at 5; Doc. 77-1 at 30–32.

Larson's conviction stemmed from failing a preemployment polygraph test, which prompted him to admit that he visited the "Dark Web" to look for and intentionally view images of child sexual abuse. Doc. 66 at ¶ 5; see supra note 1. Larson signed a confession admitted to viewing child sexual abuse materials, including images and videos. Id. In October 2019, Internet Crimes Against Children Taskforce agents executed a search warrant on Larson's devices, which revealed over ten thousand images and over nine hundred videos depicting child sexual abuse that Larson had collected over approximately ten years. Id. The images included sexually graphic images of toddlers, penetration of young children, torture, and bestiality. Id.

Under the sentencing guidelines, Larson's total offense level for receipt of child sexual abuse materials was 30 and he fell into the lowest criminal history category of I. Id. at ¶¶ 27, 30. The base level of the offense was 22, but the specific offense characteristics, including the lack of intent to traffic, the age of victims, the sadistic or masochistic conduct, the use of a computer, and the immense volume of the child sexual abuse material Larson had in his possession, led to a net increase of eight points to reach the final offense level of 30. Id. at ¶¶ 15–19. As a result, Larson's advisory guideline range was 97 months to 121 months, with a mandatory minimum of five years. Id. at ¶¶ 54–55. This Court varied downward to impose a sentence that was essentially half of the top end of Larson's guideline range due to his voluntary disclosure of the crime and his personal history and characteristics indicating that Larson was a voyeur and not a hands-on perpetrator.

---

sexually abused, making "Child Sexual Abuse Material" or "Child Sexual Abuse Images" the more appropriate title. Id.

Larson is currently incarcerated at the Sandstone Federal Correctional Institution (Sandstone) in Sandstone, Minnesota. Inmate Locator, Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last visited Jan. 3, 2023) (Register Number: 18420-273). Larson is projected to be released September 25, 2025. Id. Currently, Larson is 42 years old. Id.

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. The Centers for Disease Control and Prevention (CDC) has identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, Type 2 diabetes, as well as several other conditions. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 2, 2021).

Larson filed a motion for compassionate release based on his asthma, which Larson believes is moderate to severe and makes him more vulnerable to COVID-19, and previous infections of COVID-19. Doc. 76 at 2, 5–6. He also claims that, due to the special needs of his young son, his family requires his help to monitor his son and provide financially. Id. at 2–3, 5. If released, Larson intends to live with his wife and son in Rapid City, South Dakota, where he believes his previous employer will re-hire him. Id. at 3.

## II.    Discussion

In general, sentences are considered final judgments as a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C.A. § 3582(c); United States v. Hodgin, No. 4:15-CR-40110-02-KES, 2021 WL 928179, at *1 (D.S.D. Mar. 11, 2021). However, in 2018, Congress passed the First Step Act (FSA), Pub. L. No. 115-391, 132 Stat. 5194 (2018),

which amended 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions directly with the court seeking compassionate release once they have exhausted administrative remedies. United States v. Rodd, 966 F.3d 740, 744 (8th Cir. 2020). "The inmate also may go directly to the court if the warden of the inmate's facility does not respond to the inmate's compassionate-release request within 30 days." Id. "Compassionate release provides a narrow path for defendants with 'extraordinary and compelling reasons' to leave prison early." Hodgin, 2021 WL 928179, at *1 (citing 18 U.S.C. § 3582(c)(1)(A)(i)). "It is the defendant's burden to establish that he warrants a [18 U.S.C.] § 3582(c) reduction." United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

When evaluating a compassionate release petition, courts consider the sentencing factors in 18 U.S.C. § 3553(a) and must ensure any potential reduction is consistent with the policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); see Hodgin, 2021 WL 928179, at *1. The factors in 18 U.S.C. § 3553(a), in addition to considering the advisory guideline range in the Guidelines Manual, include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available[.]

Larson's advisory guideline range was 97 to 121 months based on a total offense level of 30 and a criminal history category of I. Doc. 66. This Court then varied downward from the guideline range and sentenced Larson to 60 months. Doc. 73. Larson's offense was quite serious. Larson possessed over ten thousand images and nine hundred videos of child sexual abuse material, one depicting a child as young as two years old being sexually assaulted. Doc. 66. Larson, however, is non-violent, has a solid work history, and had no criminal history prior to this offense. This Court was aware of, and considered, the nature of Larson's family situation and his son's needs, which were described in his presentence investigation report. That situation has not changed and does not warrant Larson's release. The sentence imposed reflected the seriousness of the offense, promoted respect for the law, provided just punishment, deterred the conduct, and protected the public.

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, demands "extraordinary and compelling reasons" to warrant a sentence reduction as well as requiring that the defendant not pose a danger to the safety of others. Hodgin, 2021 WL 928179, at *2 (citing USSG § 1B1.13(1)-(2) (Nov. 2018)). Yet Congress has not defined what constitutes "extraordinary and compelling reasons." See 28 U.S.C. § 994(t). "The Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion 'the criteria to be applied and a list of specific examples.'" Hodgin, 2021 WL 928179, at *2 (quoting 28 U.S.C. § 994(t)). The Sentencing Commission characterized "extraordinary and compelling reasons" as pertaining to (1) the medical condition of the defendant, (2) time served in combination with advanced age and deteriorating health conditions, (3) compelling family circumstances, and (4) a catch-all category of "extraordinary and compelling reason[s] other than, or in combination with, the reasons described" previously as determined by the Director of the

5

Bureau of Prisons. USSG § 1B1.13, cmt. n.1(A)-(D). Extraordinary and compelling reasons based on family circumstances can mean "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children." USSG § 1B1.13, cmt. n.1(C)(i).

Larson has exhausted his administrative remedies as he filed his petition, which was ultimately denied, with the BOP over 30 days ago. Doc. 76 at 5. However, Larson has served less than half of his 60-month sentence. Further, neither his asthma and the corresponding COVID-19 risk nor his family circumstances qualify as "extraordinary and compelling reasons" to justify his release. Though Larson does have asthma, nothing in the medical records he provides shows the severity of his condition. Doc. 79 at 6, 15, 41. There is nothing in his medical records that indicates when Larson had his last asthma attack. See generally Doc. 79. Instead, Larson states that he believes he has moderate asthma, citing his need for a medical waiver before he could proceed with a past job application to the U.S. Customs and Border Patrol as support for his diagnosis. Doc. 81 at 2. Without any verifiable way to discern the severity of Larson's asthma, his medical condition does not provide an extraordinary and compelling reason to alter his sentence.

Larson argues that his son's medical conditions are an extraordinary and compelling reason to justify a reduction. Specifically, Larson argues his release is required so that he can provide financially for the family and so his wife can remain home to maintain "constant vigilance" over their son, as recommended by doctors. Larson relies on United States v. Pelichet, CR 19-40033, 2020 WL 7053309 (D.S.D. Nov. 24, 2020),[2] and its discussion of the financial circumstances of the family to justify his assertion. Doc. 76 at 5; Doc. 81 at 1. However, Larson overinflates the

---

[2] In his brief Larson actually cites United States v. Pelichet, CR 19-40033, 2020 WL 6825699 (D.S.D. Nov. 20, 2020), however, this opinion was amended and superseded by the opinion cited above. As that opinion is the binding opinion and order and has the discussion to which Larson cites, that will be the opinion discussed.

discussion of the Pelichet family's financial state in his briefs. The Pelichet opinion does not declare the struggling family business an extraordinary and compelling circumstance but mentions it briefly after finding that the defendant's medical conditions alone constituted extraordinary and compelling circumstances to justify a release from prison. Pelichet, 2020 WL 7053309, at *8–9. Any discussion of the family finances related to the defendant's payment of restitution and release plan, not the determination of extraordinary and compelling circumstances. Id. While Larson's son does have serious conditions and Larson's family is no doubt affected by his incarceration, this Court was aware of those circumstances when Larson was sentenced. Doc. 66 at ¶¶ 34–35. Further, Larson's wife is presently the caregiver of their child. She has not died or become incapacitated. While Larson argues that his wife entering the work force puts their child at risk because he cannot be constantly monitored, that alone does not meet the criteria of the sentencing guidelines for extraordinary and compelling reasons in this case. See USSG § 1B1.13, cmt. n.1(C)(i).

There has been no significant change in Larson's family circumstances since the time of his sentencing. Thus there are no extraordinary and compelling reason to alter his sentence, especially given that this Court already varied downward from the guideline range to impose the lowest possible legal sentence, a mandatory minimum five-year sentence. If some change in Larson's circumstances occurs, he can submit another motion for compassionate release at that time.

### III. Conclusion

For the reasons discussed above, it is hereby

ORDERED that Larson's Motion for Compassionate Release, Doc. 75, is denied.

DATED this 17th day of January, 2023.

                                    BY THE COURT:

                                    _____
                                    ROBERTO A. LANGE
                                    CHIEF JUDGE